### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT PADUCAH
### CIVIL ACTION NO. 5:05CV-P60-R

**TREON MCELRATH**                                                                           **PETITIONER**

**v.**

**THOMAS L. SIMPSON**                                                                     **RESPONDENT**

### OPINION AND ORDER

On February 17, 1999, the petitioner, Treon McElrath, was convicted of one count of complicity to murder and six counts of complicity to wanton endangerment for which he received a total prison term of 52 years.  Before seeking federal habeas corpus relief, he unsuccessfully challenged his conviction and sentence on both direct appeal and collateral attack in the state court system.  This court referred the matter to United States Magistrate Judge W. David King for the resolution of all non-dispositive matters and for the preparation of a report and recommendation ("R & R") pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) (DN 7).

Following his review, Magistrate Judge King recommended that McElrath's habeas application be denied and that the action be dismissed (DN 25).  McElrath filed objections to this R & R (DN 26).  Having conducted a *de novo* review of those portions of the R & R to which McElrath objected, this court partially adopts and modifies the reasoning set forth in the R & R.  It also accepts the magistrate judge's recommendation that the court deny some of McElrath's habeas claims.  However, it rejects the recommendation that this court deny McElrath's ineffective assistance of counsel claim vis-à-vis the plea offer.  The court will refer that issue back to the magistrate judge for an evidentiary hearing and supplemental R & R.  It will also require additional briefing as to McElrath's claim that appellate counsel was ineffective for failing to raise his *Bruton* issue.

# I. BACKGROUND

## A.  Procedural Background

Following trial by jury, the Hickman Circuit Court convicted McElrath of one count of complicity to commit murder and sentenced him to a 22-year term of imprisonment.  It also convicted him of six counts of wanton endangerment in the first degree and sentenced him to consecutive five-year terms of imprisonment as to each count.  The Supreme Court of Kentucky affirmed his conviction and sentences on direct appeal.  *McElrath v. Commonwealth* ("*McElrath I*"), Case No. 1999-SC-463-MR (Ky. Apr. 26, 2001).  Thereafter, McElrath moved to vacate the sentence pursuant to Rule 11.42 of the Kentucky Rules of Criminal Procedure.  The Hickman Circuit Court denied his motion, and the Kentucky Court of Appeals affirmed that decision.  *McElrath v. Commonwealth* ("*McElrath II*"), Case No. 2002-CA-1732-MR, 2004 WL 1858228 (Ky. App. Aug. 20, 2004).  The Supreme Court of Kentucky denied McElrath's request for discretionary review.  *McElrath v. Commonwealth*, Case No. 2004-SC-766-DR (Ky. Mar. 9, 2005).

## B.  Factual Background

McElrath and two co-defendants, Terrance Boykin and Devon Everett, were convicted of complicity to murder and complicity to wanton endangerment.  The Supreme Court of Kentucky set forth the following facts in affirming McElrath's convictions:

> The convictions in this case stem from a shooting that occurred on the evening of June 21, 1998, in which Natasha Wilson was killed.
>
> Prior to the shooting, Corey Fitts and Natasha Wilson were sitting on the front porch of Natasha's grandmother's house.  Corey spotted a yellow Mustang convertible which he believed belonged to McElrath.  Corey testified that he became alarmed by the presence of the vehicle because previously both he and Natasha had taken warrants out against Boykin.  Corey feared that Boykin was in

the vehicle with McElrath and that they had come to seek revenge.  Upon Corey's identification of the Mustang as McElrath's, Natasha went inside the house and made a 911 call to the police.

Corey testified that after Natasha placed the 911 call, she returned to the porch.  In response to a question on cross-examination by the defense, he testified that he stayed on the porch because Natasha had informed him that the police were going to pick up McElrath.  Corey testified that some twenty minutes thereafter, he saw two armed men turn the corner of the house and approach the porch where he and Natasha were seated.  At that point, they both ran for the house and entered it about the same time.  Corey fled to the bathroom and jumped into the bathtub.  Natasha did not make it past the doorway where she lay mortally wounded.  Corey positively identified the shooters as Boykin and one Andra Devon Everett.

Officer Brian Morrison testified that he spotted a yellow Mustang driven by McElrath about fifteen minutes before the shooting occurred.  From his testimony it is not clear whether Morrison already knew McElrath or identified him after his arrest.  Morrison took Natasha's 911 call.  After talking with Natasha, he checked to see if McElrath had any outstanding warrants.  Upon completion of the records check, he received a call from Natasha's grandmother stating that Natasha had been shot.  He then went immediately to the crime scene.

Officer Christopher Cummings of the Union City, Tennessee Police Department, stopped McElrath's yellow Mustang for a traffic violation about two and half hours prior to the shooting.  Cummings was familiar enough with Boykin and McElrath to recognize them both on sight.

Later that evening, Officer Cummings received a telephone call from Officer Goodson of the Clinton, Kentucky Police Department.  As a result of that telephone call, Cummings left the police department and came across McElrath approximately two minutes later at a residence located at 731 E. Vine Street in Union City, Tennessee.  Cummings knew that McElrath's grandmother lived at this residence and that McElrath often could be found there.  In addition to McElrath, Cummings found Boykin and Everett at this residence along with McElrath's yellow Mustang.  Cummings arrived at the residence about thirty-five minutes after the shooting occurred across the border in Clinton, Kentucky.

Finally, on the night of the shooting, Eric and Sammy Hunter were visiting their parents, who lived about 760 feet away from the scene of the shooting.  While there, McElrath paid a surprise visit.  He was there about ten minutes and left immediately after gun shots ran out nearby.

*McElrath I*, slip op. at 2-4.

## II. ISSUES

In his petition, McElrath alleged that federal habeas corpus relief is appropriate for four principal reasons.  First, he claimed that because he was not present during the shootings, there was insufficient evidence to support his convictions.  Second, he claimed that his attorney, Benjamin Lookofsky, labored under an actual conflict of interest at trial because he also represented a co-defendant at trial.  Third, he claimed that the Commonwealth failed to disclose *Brady* material in the form of criminal records of an eyewitness.  Finally, McElrath claimed counsel was ineffective at the trial and on appeal.

As to the ineffective assistance of counsel claims, McElrath maintained that his trial counsel failed to:  (1) object to jury instructions which omitted the mens rea requirement for complicity to wanton endangerment; (2) properly advise him regarding the Commonwealth's plea offer; (3) to conduct pretrial investigation; and (4) raise a *Batson* claim.  He also claimed that appellate counsel failed to:  (1) raise the issue as to the admission of the non-testifying co-defendants' statements; (2) raise the issue as to the trial court's erroneous jury instructions; (3) raise the issue as to the admission of inadmissible evidence and evidence as to which no proper foundation was laid; (4) raise the conflict of interest issue; (5) raise the *Brady* issue; and (6) plead actual prejudice arising from the joint trial.

4

### III.  STANDARD OF REVIEW

Pursuant to statute, this court's standard for reviewing a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1); *see also* 28 U.S.C. foll. § 2254, R. 10.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "new constraint[s] on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The applicable statute provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.
>>
>> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal district court may grant the writ "if the state court arrived at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court's decisions on materially indistinguishable facts." *Williams,* 529 U.S. at 412-13.  Under the  "unreasonable

5

application" clause, a federal district court may grant the writ if "the state court correctly identified the correct legal principle from Supreme Court precedent but unreasonably applied that principle to the facts of the case before it." *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003) (citing *Williams*, 529 U.S. 412-13).

Under the AEDPA, "clearly established federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams,* 529 U.S. at 412.  "'As is dictated by the statute, [reviewing courts] may not look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.'" *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004) (quoting *Doan v. Brigano*, 237 F.3d 722, 729 (6th Cir. 2001)).   Reviewing courts may consider such lower federal court decisions, however, to the extent that such a decision reflects review and interpretation of "'relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court.'" *Id.* (quoting *Hill v. Hofbauer,* 337 F.3d 706, 716 (6th Cir. 2003)).  Reviewing courts are "also bound by any prior Sixth Circuit decisions concluding that federal law on a particular issue has been 'clearly established' by certain holdings of the Supreme Court." *Id.* (citing Rule 206(c) of the Sixth Circuit Rules.  ("Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court en banc consideration is required to overrule a published opinion of the court.'")).

Even where the state court decision does not specifically cite to relevant federal case law, the deferential AEDPA review standard applies.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that the state court is not required to cite Supreme Court cases, or even be aware of them, to be

6

entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them"). However, the deferential standard of the AEDPA does not apply where the state court has not adjudicated the merits of a particular claim. *Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003) ("Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.")). In that instance, the claim is review *de novo. Id.*

Additionally, a state prisoner must first exhaust all available state court remedies before proceeding in federal court. This requirement is satisfied when the highest court in the state in which the petitioner was convicted is given a full and fair opportunity to rule on the petitioner's claims. *Hanna v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). Failure to comply with this rule may result in procedural default and will bar the petitioner from asserting the claim in federal court as a grounds for relief unless he can establish that a fundamental miscarriage of justice will result. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

Where, as here, a petitioner asserts ineffective assistance of counsel, whether at trial or on direct appeal, he must show both that his counsel's performance was highly deficient and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668 (1984); *Smith v. Murray,* 477 U.S. 527, 535-36 (1986) (applying *Strickland*'s two-prong test to claims of ineffective assistance of appellate counsel). The petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. To satisfy the standard for constitutionally adequate performance, the attorney must provide "reasonably effective assistance." *Id*. Further,

to prove ineffectiveness, a petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. A petitioner must then show that there is a reasonable probability that, but for counsel's inadequate performance, the results would have been different. *Id*. at 687. The court's scrutiny of counsel's performance is highly deferential, and counsel is strongly presumed to have rendered adequate assistance and have made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 689; *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).

## IV. LEGAL ANALYSIS

### A. Insufficient Evidence to Support Convictions of Complicity to Murder and Complicity to Wanton Endangerment

McElrath claims that because the evidence established that he was not present at the time of the shootings, there was insufficient evidence to support his convictions of complicity to murder and complicity to wanton endangerment. This claim was presented to the state courts and considered on its merits. In rejecting McElrath's claim on direct appeal, the Supreme Court of Kentucky stated:

> Both Boykin and McElrath argue that there was not sufficient evidence to support their convictions. The argument is completely meritless. As for Boykin, Corey Fitts identified him as one of the shooters. As for McElrath, the Commonwealth's theory of the case against him for complicity lay in providing transportation to and from the crime scene. The instructions are in accord. There was ample evidence to support McElrath's convictions. He was seen driving his yellow Mustang in front of the crime scene some twenty minutes before the shooting. He was seen driving Boykin and Everett before and after the shooting. Finally, he was placed within 800 feet of the crime scene at the time the shooting occurred. The trial court did not err in denying Boykin's and McElrath's directed verdict motions.

*McElrath I*, slip op. at 6. Thus, the question before this court is whether the state court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application

of clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

McElrath presents two principal objections to the reasoning in the R & R. First, he claims that the magistrate judge misinterpreted and misapplied the Sixth Circuit's opinion in *Sanford v. Yukins*, 288 F.3d 855, 863 (6th Cir. 2002). And, second, he claims that the magistrate judge incorrectly determined that sufficient evidence was presented at trial to convict McElrath of the charges. Having reviewed the R & R in light of the applicable law, this court will modify the reasoning of the recommendation as more fully outlined below but will accept the recommendation that these particular claims be denied.

As the magistrate judge correctly notes, federal courts are not to review questions of state law in the context of a federal habeas review. The United States Supreme Court has clearly held, however, that the Due Process Clause protects a criminal defendant from being convicted of a crime without proof beyond a reasonable doubt as to every element of the offense charged. *In re Winship*, 397 U.S. 358, 364 (1970). In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court held that a federal habeas court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt but emphasized:

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

443 U.S. at 318-19 (original emphasis and citations omitted).  The Supreme Court specifically stated that "the standard announced . . . does not permit a court to make its own subjective determination of guilt or innocence [and] does not require scrutiny of the reasoning process actually used by the factfinder--if known."  *Id*. at 320 n.13.  Moreover, when reviewing this particular type of claim, a court is not to assess the credibility of the witnesses.  *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  The mere existence of sufficient evidence to convict defeats a petitioner's claim, *id.*, and "circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt."  *United States v. Talley,* 194 F.3d 758, 765 (6th Cir. 1999).

In applying the standard, the reviewing court must make "explicit reference to the substantive elements of the criminal offense *as defined by state law*."  *Jackson*, 443 U.S. at 324 n.16 (emphasis added).  To the extent that the R & R relied on Michigan law, the analysis was incorrect because it failed to rely on Kentucky law when determining whether sufficient evidence supported the convictions.  *Gall v. Parker,* 231 F.3d 265, 287 (6th Cir. 2001).

Turning now to the elements of the complicity as codified and set forth in statutory law, Ky. Rev. St. ("KRS") § 502.020 provides:

 (1)  A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:

> (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense;  or

> (b) Aids, counsels, or attempts to aid such person in planning or committing the offense;  or

> (c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

(2)  When causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense when he:

> (a) Solicits or engages in a conspiracy with another person to engage in the conduct causing such result;  or
>
> (b) Aids, counsels, or attempts to aid another person in planning, or engaging in the conduct causing such result;  or
>
> (c) Having a legal duty to prevent the conduct causing the result, fails to make a proper effort to do so.

The Supreme Court of Kentucky states that there are "two separate and distinct theories under which a person can be found guilty by complicity; *i.e.,* 'complicity to the act' under KRS 502.020(1), which applies when the principal actor's conduct constitutes the criminal offense, and 'complicity to the result' under subsection (2) of the statute, which applies when the result of the principal's conduct constitutes the criminal offense." *Tharp v. Commonwealth*, 40 S.W.3d 356, 360 (Ky. 2000).  The Supreme Court of Kentucky goes on to state:

> The primary distinction between these two statutory theories of accomplice liability is that a person can be guilty of "complicity to the act" under KRS 502.020(1) only if he/she possesses the intent that the principal actor commit the criminal act.  However, a person can be guilty of "complicity to the result" under KRS 502.020(2) without the intent that the principal's act cause the criminal result, but with a state of mind which equates with 'the kind of culpability with respect to the result that is sufficient for the commission of the offense,' whether intent, recklessness, wantonness, or aggravated wantonness.  KRS 502.020 (1974 Official Commentary); R. Lawson and W. Fortune, Kentucky Criminal Law § 3-3(b)(3), at 106, § 3-3(c)(2), at 114 (LEXIS 1998).  The most common examples of offenses having a prohibited result are homicide, with the death of another as the prohibited result, and assault, with the bodily injury.

*Tharp*, 40 S.W.3d at 361.

McElrath was charged with complicity under KRS 502.020(1)(b).[1]  In other words, to be found guilty of crimes committed by another, the Commonwealth was required to prove the principal crimes occurred, *see Sams v. Commonwealth*, 171 S.W.2d 989 (Ky. 1943), that McElrath intended to promote or facilitate those particular offenses, Robert G. Lawson and William H. Fortune, *Kentucky Criminal Law*, §§ 3-3(b)(2) & (3) (1998), and that he assisted or encouraged the offense.  Leslie W. Abramson, *Kentucky Practice*, Vol. 10, § 3.4 (2d ed. 2000).  McElrath argues that there was not sufficient evidence to prove that he had the requisite intent with respect to any of the convictions.  This court disagrees.

"[C]omplicity requires an intention to promote or facilitate commission of the offense." *Skinner v. Commonwealth*, 864 S.W.2d 290, 298 (Ky. 1993).  The Supreme Court of Kentucky has long held that intent can be inferred from the act itself and the surrounding circumstances. *See Mills v. Commonwealth*, 996 S.W.2d 473, 490 (Ky. 1999); *Talbott v. Commonwealth*, 968 S.W.2d 76 (Ky. 1998); *see also Waters v. Kassulke*, 916 F.2d 329, 334 (6th Cir. 1990) (holding that "a jury is given a wide latitude to infer intent from the surrounding facts and circumstances") (citations omitted).  Moreover the Supreme Court of Kentucky has held that because a person is presumed to intend the logical and probable consequences of his conduct, a person's state of mind may be "inferred from his actions preceding and following the charged offense."  *Hudson v. Commonwealth*, 979 S.W.2d 106, 110 (Ky. 1998) (quoting *Parker v. Commonwealth*, 952 S.W.2d 209, 212 (Ky. 1997), *cert. denied* 522 U.S. 1122 (1998)); *Wilson v. Commonwealth*, 601 S.W.2d 280 (Ky. 1980).

---

[1]During pretrial discussions, counsel referenced KRS 502.020(1)(b) when voicing objections to the charges (Tr. of Hr'g, Vol. 1, p. 26).  And the jury instructions invoke the language of this particular section.

Here, Boykin/Everett's use of guns to shoot and kill Natasha Wilson constituted the criminal offense of murder. The question is whether McElrath intended to promote or facilitate that very murder. In the R & R, the magistrate judge points to five pieces of evidence that he believes was sufficient for the conviction, including the requisite intent. It is beyond cavil that McElrath provided Boykin and Everett with transportation both to and from the crime scene. He specifically drove past the crime scene minutes before the shooting occurred. He appeared briefly at a home near the crime scene just moments before the shooting and left those premises immediately after hearing gun fire. And, he was found in the company of the perpetrators within a short time following the murder. This court concludes that after viewing the evidence in the light most favorable to the prosecution and in light of the elements of the crime as defined by Kentucky law, *any* rational trier of fact could have concluded beyond a reasonable doubt that McElrath intended to promote or facilitate the murder of Natasha Wilson.

With respect to McElrath's convictions for complicity to wanton endangerment, he claims that the R & R erroneously conflated the mens rea requirement for complicity to murder with the mens rea requirement for complicity to first degree wanton endangerment. In other words, McElrath argues that in order for him to be found guilty of these crimes, the Commonwealth was required to prove that he himself intended his co-defendants to "shoot[] at two individuals on a front porch *in the vicinity of other individuals*." (DN 26, Mem., p. 21). He claims that there was no evidence that he knew of the other individuals' presence or that he intended for his co-defendants to engage in wanton conduct with respect to those individuals. *Id.*

Here, Boykin/Everett's use of guns to shoot at Wilson and Fitts in the vicinity of others constituted wanton endangerment. The question is whether McElrath intended to promote or

13

facilitate those very crimes.  Again, McElrath provided the transportation both to and away from the crime scene.  In fact, when he drove by the residence prior to the shooting, the victim and Fitts were sitting on the front porch.  Thus, he was well aware that he was providing Boykin and Everett with transportation to a home that was occupied.  When his co-defendants shot at both Wilson and Fitts, the two victims ran for cover through the front door into a living area where some of Wilson's relatives were located.[2]  Because under Kentucky law a person is presumed to intend the logical and probable consequence of his conduct, because McElrath assisted his co-defendants in their committing these crimes, and because a logical and probable consequence of the shooting is that others in the inhabited home would be endangered, then this court concludes that any rational trier of fact could conclude beyond a reasonable doubt that McElrath intended to promote and facilitate these very crimes.  Accordingly, this court concludes that the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, and McElrath is not entitled to federal habeas corpus relief based upon these claims.

**B. Conflict of Interest**

McElrath's second claim is that his counsel labored under an actual conflict of interest at trial by representing both McElrath and his co-defendant, Terrance Boykin.  This claim was presented to the state courts in McElrath's postconviction attack and was considered on its merits.  In rejecting McElrath's claim, the Kentucky Court of Appeals analyzed this claim under the rubric of a state criminal procedural rule, Rule 8.30.  *See McElrath II*, 2004 WL 1858228, at

---

[2]The victim's grandmother was sitting in the front room along with four other relatives, including the victim's three children (Tr. of Hr'g, Vol. 2, pp. 233-34).

14

*1-5.  Rule 8.30 requires the trial court to explain to defendants the possibility of a conflict of interest caused by one attorney representing multiple defendants.  Though the trial court failed to comply with that rule, the Kentucky Court of Appeals held that this omission did not warrant postconviction relief in McElrath's favor.  The appellate court stated that "a violation of [Rule] 8.30 which does not result in any prejudice to the defendant does not entitle a defendant to post-conviction relief."  *Id.* at *3.

McElrath argues that the decision by the Kentucky Court of Appeals is contrary to established Supreme Court precedent because it read a prejudice requirement into the appropriate standard of review.   This court disagrees as the state appellate court held that McElrath must establish prejudice before a violation of that particular *state* procedural rule could result in postconviction relief.  The appellate court did not undertake a review of McElrath's *federal* constitutional claim, to wit, that an actual conflict of interest deprived McElrath of his Sixth Amendment right to counsel.  Accordingly, where a state court fails to address the merits of a habeas petitioner's federal constitutional claim, this court undertakes a *de novo* review of the claim.  *Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir. 2004).

This court has reviewed the magistrate judge's reasoning and concludes that he reached the correct result.  In analyzing McElrath's claim, the magistrate judge identified the proper standard of review as set forth in *Cuyler v. Sullivan*, 446 U.S. 335 (1987) and applied that standard to the facts of this case.  This court sees no reason to reject that well-reasoned decision.  Although McElrath's counsel invoked his client's name when questioning witnesses about the identity of the actual shooters, it is clear that counsel was attempting to impeach the credibility of the surviving witness, Corey Fitts, not impugn liability to McElrath.  Neither the prosecution

15

nor defense labored under any perception that McElrath himself was a shooter.  Rather, the prosecutor theorized that McElrath drove the getaway car while the defense attempted to show that it was the surviving witness, Corey Fitts, who shot and killed Natasha Wilson, as gun residue had been found on Fitts' hands.  The jury simply did not buy the defense.  There is no question that McElrath perpetrated the crimes for which he was convicted.  As the magistrate judge correctly noted, counsel did not make a choice between protecting the co-defendant's interests to the detriment of McElrath's.  Rather, counsel was putting forth, albeit unsuccessfully, his clients' best defense.  McElrath identified no "actual conflict" that "adversely affected" counsel's performance.  Because McElrath was not deprived of his Sixth Amendment right to counsel, this court concludes that his claim lacks merit.

## C.  The *Brady* Claim

McElrath next claims that federal habeas relief is warranted because the Commonwealth violated the rule set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), which stands for the proposition that the government violates a defendant's right to due process by suppressing favorable evidence that is material to the defendant's guilt or punishment.  Specifically, McElrath claims that the prosecution failed to disclose the criminal records of Fitts, who was the Commonwealth's only eye-witness to the shooting.  McElrath claims he could have used this information to impeach Fitts's credibility.

McElrath presented this claim in his state postconviction motion.  In rejecting McElrath's claim, the Kentucky Court of Appeals held that the claim was procedurally defaulted.  *McElrath II*, 2004 WL 1858228, at *5.  In the R & R, the magistrate judge recommends that the claim be denied on its merit.  Having reviewed the R & R in light of the applicable law, this court agrees

16

that the claim must be denied but will modify the analysis because the claim is procedurally defaulted.

A finding by a state court of procedural default constitutes an adequate and independent state procedural ground which forecloses review of this particular claim by the federal district court. *Reynolds v. Berry,* 146 F.3d 345, 347-48 (6th Cir. 1998). If an independent and adequate state procedural rule causes the petitioner to lose review of the federal claims in state court, the federal courts will not review the merits of the claim unless the petitioner can show cause and prejudice for his failure to comply with state court rules. *See Coleman v. Thompson,* 501 U.S. 722, 749-50 (1991); *Harris v. Reed*, 489 U.S. 255, 261-63 (1989).

In his response to the Commonwealth's dispositive motion, McElrath essentially argued that his procedural default should be excused because his counsel failed to raise the issue on direct appeal. McElrath, in fact, set forth a separate claim of ineffective assistance of appellate counsel for this very omission (DN 1, Pet., p. 32). The R & R, however, concluded, among other things, that the claim was vaguely set forth and otherwise procedurally defaulted (DN 25, p. 23). This court disagrees.

A petitioner may argue that his attorney's constitutionally ineffective assistance establishes the requisite cause in the "cause and prejudice" analysis. However, before ineffective assistance of counsel can be cause, the issue of ineffective assistance of counsel must itself be exhausted in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000); *Richey v. Mitchell*, 395 F.3d 660, 679 (6th Cir. 2005). In Kentucky, convicted inmates have no forum in which to assert an ineffective assistance of appellate counsel claim. *Harper v. Commonwealth,* 978 S.W.2d 311 (Ky. 1998). Accordingly, McElrath could not have

17

procedurally defaulted the ineffective assistance of appellate counsel claim.  Therefore, the court will now turn to the issue of whether ineffective assistance of appellate counsel itself establishes the requisite cause to excuse McElrath's procedural default of the *Brady* claim.

Ordinary attorney error does not constitute cause.  *Murray v. Carrier*, 477 U.S. 478, 486 (1986).  Rather, the error must arise to the level of depriving the petitioner of constitutionally effective counsel under the test enunciated in *Strickland v. Washington*, 466 U.S. 688 (1984).  As previously noted, the *Strickland* Court set forth a two-prong test to determine whether a defendant has been deprived of a fair trial as a result of errors by counsel:  (1) deficient performance; and (2) prejudice.

The court will first turn to the prejudice prong of *Strickland*.  This prong requires a defendant to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id*. In those circumstances where a defendant challenges his conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.

The court finds no prejudice as there is no reasonable probability that the result would have been different had counsel received Fitt's criminal records.  In other words, the failure to provide this information to McElrath does not undermine this court's confidence in the verdict. Moreover, it is questionable as to whether any of this information, to wit misdemeanor convictions, outstanding drug charges, and a juvenile felony conviction, would have been admissible as Rule 609 of the Kentucky Rules of Evidence only permits the introduction of

18

"evidence that the witness has been convicted of a crime . . . but only if the crime was punishable by death or imprisonment for one (1) year or more . . . ."

Because this court finds that McElrath failed to establish the requisite prejudice, it need not determine whether McElrath can establish that counsel's performance was deficient. *Strickland*, 466 U.S. at 697 (holding that it is unnecessary to examine both prongs if a defendant fails to make a sufficient showing on one prong). And since McElrath cannot establish ineffective assistance of appellate counsel, he in turn cannot establish cause to excuse his procedural default of the *Brady* claim. Finally, he failed to establish actual innocence or the manifest injustice sufficient to excuse his procedural default. Accordingly, the court concludes that McElrath's *Brady* claim is procedurally defaulted.

### D.  Ineffective Assistance of Counsel Claims

#### 1.  Ineffective Assistance at Trial

McElrath purportedly set forth numerous claims of ineffective assistance of trial counsel in his Rule 11.42 postconviction motion before the state trial court. *McElrath II*, 2004 WL 1858228, at *6. Before the Kentucky Court of Appeals, however, he advanced only the following four claims:  (1) counsel failed to object to jury instructions which omitted the mens rea requirement for complicity to wanton endangerment; (2) counsel failed to properly advise the petitioner regarding the plea offer; (3) counsel failed to conduct pretrial investigation; and (4) counsel failed to raise a *Batson* claim. *Id.* at *6-7; *see also McElrath v. Commonwealth*, Case No. 2002-CA-1732 (Petr.'s Br. pp. 15-17).  The state appellate court deemed waived those remaining claims not specifically raised on appeal. *McElrath II*, 2004 WL 1858228, at *6.

McElrath claims that he presented all of this claims to the appellate court.  He argues that appellate court "did not 'clearly and expressly rely' on a procedural bar" in rejecting those claims, and he also maintains that he raised a "unified claim" of ineffective assistance of counsel which the state court wrongly addressed (DN 26, Mem. p. 56).

First, the state court was clear in its reliance on a state procedural default rule in denying the claims not specifically raised in his postconviction brief, and the magistrate judge correctly held as much.  And, second, to the extent that McElrath claims that his ineffective assistance of counsel claims can and must be reviewed cumulatively, the Sixth Circuit has clearly rejected the argument that errors "can be cumulated to grant habeas relief."  *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004) (quoting *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)), *cert. denied*, 125 S.Ct. 1645 (2005).  Since McElrath failed to show cause and prejudice to excuse his procedural default of those claims not raised and reviewed by the postconviction appellate court, they will not be reviewed here.  The court will, however, undertake a *de novo* review those four claims identified above, the analysis to which McElrath objected.

First, the R & R erroneously holds that the claims premised on counsel's purported failure to investigate the case and to object to the jury's make-up in light of *Batson v. Kentucky*, 476 U.S. 79 (1986) were procedurally defaulted.  This court has reviewed the issue *de novo* and concludes that the Kentucky Court of Appeals undertook a merits-based review of the claims but essentially held that McElrath failed to establish how counsel's performance was deficient.  In reviewing that holding in light of the applicable law, this court holds that the ruling was neither contrary to nor an unreasonable application of the *Strickland* standard.

20

Second, the court has reviewed *de novo* McElrath's claim that counsel was ineffective for failing to object to the jury instructions with respect to the charges of wanton endangerment. This court concludes that the magistrate judge reached the correct decision in this matter, and it adopts it.  The state court's resolution of the claim was neither contrary to nor an unreasonable application of the *Strickland* standard.

Finally, this court turns to McElrath's claim that counsel was ineffective with respect to the Commonwealth's plea offer.  To ascertain whether counsel's performance was ineffective, the court needs more information, which is clearly lacking in the record before it.  There is a factual dispute as to whether any such plea offer was made in the first instance.  Moreover, the gap between the purported plea offer of 5 years and the actual sentence of 52 years is sufficient to warrant an evidentiary hearing to examine what advice counsel gave McElrath versus what he should have given and whether there is a "reasonable probability" that McElrath would have accepted the offer had he been completely advised.  *Smith v. United States*, 348 F.3d 455, 553 (6th Cir. 2003) ("A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.").

Accordingly, the court will reject the recommendation that McElrath's ineffective assistance of counsel claim based on counsel's failure to explain the plea offer be dismissed. The claim will be referred again to the magistrate judge for an evidentiary hearing.  This court notes that McElrath sought an evidentiary hearing in state court with respect to this claim but was denied an opportunity to develop its factual basis.  McElrath was not at fault for the failure

21

to develop the basis of the claim.  *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (holding that to satisfy the diligence requirement of § 2254(e)(2), in the usual case, a petitioner must "at a minimum seek an evidentiary hearing in state court in the manner prescribed by state law"). Since McElrath was not at fault for the lack of factual development, the strict requirements of § 2254(e)(2) do not apply, and this court concludes that he is otherwise entitled to an evidentiary hearing on this matter.  *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) (holding that "a habeas petitioner is generally entitled to such a hearing if he alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing") (quoting *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002)).

### 2.  Ineffective Assistance on Appeal

McElrath set forth the following seven issues with respect to his claim that counsel was ineffective on appeal because counsel failed to raise or articulate:

1.  the conflict of interest issue;

2.  the discovery violations by the Commonwealth which withheld *Brady* material;

3.  the *Bruton* issue due to the introduction of a non-testifying co-defendants' statements;

4.  the erroneous jury instructions;

5.  admission of inadmissible evidence;

6.  admission of evidence without a proper foundation; and

7.  the prejudice prong with respect to McElrath's claim that he was entitled to a separate trial.

(DN 1, Mem., p. 32).   The R & R noted that some of the arguments had been rejected on their merits.   It rejected Issues 5 and 6 on their merits and concluded that Issues 3 and 7 failed to rise

22

to the level of presenting the court with a proper argument.[3]   There was no discussion in the R & R with respect to Issues 1, 2 and 4.

Because this court has reviewed Issues 1, 2, and 4 in the context of substantive challenges to the criminal trial itself and concluded that the claims lack merit, McElrath suffered no prejudice due to counsel's failure to raise these issues on appeal.  With respect to Issue 5 (inadmissible evidence) and Issue 6 (improper foundation), the magistrate judge correctly concluded that questions regarding the admissibility of evidence are matters of state law not subject to federal habeas corpus review.  *See Estelle v. McGuire,* 502 U.S. 62, 68-69 (1991) (holding that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

With respect to Issue 3, the *Bruton* issue,[4]  the issue was summarily rejected on the basis that it failed to rise to the level of a legal argument.  This court disagrees.  Having reviewed the paragraphs in light of Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, this court concludes that the allegations meet the pleading requirements of the rule.  A different problem for McElrath, however, appears to exist in that the claim may be procedurally defaulted.

---

[3]To the extent that the R & R concludes that they are procedurally defaulted, this court disagrees because Kentucky does not provide a forum in which to raise ineffective assistance of appellate counsel claims.

[4]*Bruton v. United States*, 391 U.S. 123, 126 (1968) held that a co-defendant's confession, which also implicated the defendant, could not be admitted in the joint trial of the two conspirators without violating the non-declarant defendant's rights under the Confrontation Clause unless the co-defendant was available and subject to cross examination.

It is clear that McElrath's *Bruton* claim itself was procedurally defaulted at the trial court level because counsel failed to object to the introduction of the statements, thereby not preserving the issue for appellate review. *See* Rule 9.22 of the Kentucky Rules of Criminal Procedure (requiring a party to make appropriate objections to preserve a matter for appellate review). McElrath did raise a related claim in his Rule 11.42 motion, arguing that counsel was ineffective for failing to make the requisite objection at trial in the first instance. *McElrath II*, Case No. 2002-CA-1732 (Petr.'s Br., App., p. 23). Yet, he did not advance that claim in his postconviction appellate brief. While it is true that a claim premised on ineffective assistance of *appellate* counsel is not a cognizable issue that Kentucky courts will review, *see Harper v. Commonwealth*, 978 S.W.2d 311, 318 (Ky. 1998), McElrath must first exhaust his claim that *trial* counsel was ineffectiveness for not make the necessary objections trial. Only after he has exhausted that particular claim may this court review his claim that *appellate* counsel was ineffective for not raising it on appeal. Accordingly, the court will reject the analysis of this particular claim and require the parties to submit additional briefing on the issue of whether the claim is procedurally barred.

Finally, McElrath claims that counsel was ineffective for failing to plead actual prejudice arising from his being tried with his co-defendants, Boykin and Everett. The magistrate judge summarily rejected this claim for being vague and conclusory. This court agrees with that decision. McElrath claims that had the issue been properly briefed, the state court would have granted postconviction relief. He points to the fact that the Supreme Court of Kentucky ridiculed counsel with respect to how the particular claim was briefed. Beyond identifying the fact that

the state supreme court ridiculed counsel, McElrath failed to show how he was prejudiced as a result of the joint trial.

## V. ORDER

Having undertaken a *de novo* review of those portions of the R & R to which McElrath objected,

**IT IS HEREBY ORDERED** as follows:

1.  This court **rejects in part, accepts in part,** and otherwise **modifies** the R & R as set forth above.   Accordingly, the respondent's motion to dismiss/summary judgment (DN 14) is **DENIED in part** and **GRANTED in part**.

2.  This matter is referred to **Magistrate Judge W. David King** pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) for an evidentiary hearing with respect to McElrath's claim that counsel was ineffective when advising him with respect to the Commonwealth's plea offer.

3.  The parties are directed to address the issue of whether McElrath procedurally defaulted his ineffective assistance of appellate counsel claim premised on statements admitted purportedly in violation of *Bruton*.   The magistrate judge will set the appropriate time-line for briefing that particular issue.

4.  Upon completion of the hearing and briefing, the magistrate judge will file a supplemental report and recommendation to which objections may be made.   The magistrate judge is also to undertake an analysis as to whether any of the claims presented in McElrath's

habeas petition are entitled to a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed.

R.App. P. 22(b).

Date:

cc:    Counsel of Record
       Mag. J. King
       4413.002