UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**TREON McELRATH**
 Petitioner

**v.**                            **No. 5:05CV-00060-R**

**THOMAS L. SIMPSON**
 Respondent

**OPINION AND ORDER**

The petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which this court subsequently denied on March 26, 2007. The petitioner, through counsel (the Honorable Christopher N. Lasch), seeks to appeal the court's decision with respect to the issues presented in his habeas petition. He therefore filed a motion on April 24, 2007, seeking a certificate of appealability (COA) from this court pursuant to 28 U.S.C. § 2253 on the following claims (Docket Entry No. 45):

 1. Whether the petitioner's trial counsel, the Honorable Benjamin Lookofsky, labored under an actual conflict of interest that adversely affected his performance.

 2. Whether Mr. Lookofsky was ineffective for suggesting that the petitioner reject a five-year plea offer.

 3. Whether Mr. Lookofsky was ineffective for failing to investigate the petitioner's defense.

 4. Whether Mr. Lookofsky was ineffective for failing to object to improper jury instructions that omitted the <u>mens rea</u> requirement.

## Standard of Review

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a COA." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner has already failed in that endeavor." *Miller-El*, supra, at p. 337.

Courts must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed.R.App.P. 22(b)(1); *In Re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir., 1997). To obtain a COA, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Miller-El*, supra, at p. 338. Similarly, the Supreme Court has stated as follows:

> [T]he petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court **could** resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983) *(emphasis added and internal citation and quotation marks omitted)*.

**Conflict of Interest**

Mr. Lookofsky represented the petitioner and his cousin, Terrance Boykin. The prosecution's theory of the case was that the petitioner drove Boykin and another co-defendant, André Everett, to the scene of the crime in the petitioner's yellow Mustang convertible. The prosecution's theory reflected that the petitioner's role was distinguishable from that of Boykin and Everett in that the latter were the actual gunmen and the petitioner was visiting some neighbors who lived about 760 feet away from the scene of the shooting when shots rang out. Nevertheless, after the shots rang out, and the petitioner terminated his visit and transported the assailants from the scene.

Mr. Lookofsky presented a joint defense, which was that neither the petitioner nor Boykin had any role in the murder and that the true assailant was the victim's boyfriend, Corey Fitts, who shot the victim, Narasha Wilson, from inside the house and not Boykin and Everett, who were outside the house. The physical evidence presented at trial did not support the joint defense theory that Fitts had fired shots from inside the house. The jury convicted all three men, who had exercised their Fifth Amendment right not to testify, of one count of complicity to murder and six counts of wanton endangerment, and each received a sentence of 52 years.

At trial, after presentation of all the evidence, the petitioner made a motion for a directed verdict of acquittal. Apparently because the evidence reflected that the roles of the petitioner and Boykin / Everett were substantially different, Judge Shadoan expressed some doubt as to whether he should grant the motion. Out of the hearing of the jury, Judge Shadoan candidly asserted that the "only one that's got a real case that I can see in this whole thing is Boykin. ... I have a reasonable doubt but I'm not the jury." Notwithstanding these misgivings, the motion was denied.

The petitioner argues that Mr. Lookofsky labored under an actual conflict of interest that adversely affected his performance when he represented both the petitioner and Boykin at trial. To show an unconstitutional conflict of interest, where the issue was not raised at trial, a petitioner must show that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). This court has already concluded that the petitioner has failed to identify a specific example in the state court record in which Mr. Lookofsky made a choice that was simultaneously "helpful to one client [i.e., Boykin] but harmful to the other [i.e., the petitioner]," which is the hallmark of an impermissible conflict. *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir., 1987).

In concluding that the claim is without merit, this court reasoned that the petitioner and Boykin had a shared defense, which was that the true assailant was neither the petitioner nor Boykin but rather a third person (Fitts) who was present with the victim at the time of her murder. Hence, even though Mr. Lookofsky repeatedly elicited testimony that Fitts first told authorities that the petitioner was one of the gunmen, the intent was to illustrate how Fitts had changed his story and had something to hide and, in any event, the prosecution was not claiming that the petitioner was one of the gunmen. As illustrated in his hesitation in ruling on the petitioner's motion for a directed verdict, Judge Shadoan was aware that the evidence reflected that the petitioner played a lesser role.

This court viewed Judge Shadoan's hesitation as a good indication that Mr. Lookofsky's joint defense had been quite effective as to the petitioner. However, the court now finds that reasonable jurists could debate whether counsel should have anticipated that the jury would have been unable or unwilling to make the fine evidentiary distinctions that may have concerned Judge Shadoan. The jury simply convicted all three men of the same crimes and recommended the same sentence.

Another troubling aspect of this case is that, in a letter dated February 4, 1999, Mr. Lookofsky affirmatively advised the petitioner that "[t]he only possible fly in the ointment is whether or not Corey Fitts testifies. ... I have been advised that Mr. Fitts is no longer in the area." At some point prior to trial, counsel should have discovered that Fitts had been subpoenaed to testify. While the defense Mr. Lookofsky presented may have been the best available joint defense prior to Fitts availability as a witness, the court concludes that reasonable jurists could debate whether a joint defense continued to be or, indeed, ever was in the petitioner's best interest. The court further finds that it is debatable whether an unconflicted counsel would have allowed and even elicited repeated references to Fitts' original statement that the petitioner was one of the gunmen. This allowance arguably was in the interest of pursuing a joint defense and at the risk of confusing the jury when the petitioner had nothing to gain from it. Therefore, a COA shall be granted as to the issue of whether Mr. Lookofsky labored under an actual conflict of interest that caused him to persist in a joint defense that was no longer in the petitioner's best interest. Furthermore, for the reasons set forth below, a COA shall be granted as to each issue raised by the petitioner that arguably was an instance of adverse performance flowing from the joint defense.

**Effectiveness in Relation to Rejected Plea Offer**

This case presents a fairly dramatic factual scenario in which Mr. Lookofsky admitted that the prosecution extended an offer of five years in exchange for a plea of guilty, but Mr. Lookofsky did not affirmatively advise his client to accept the offer. As indicated above, the petitioner was eventually tried and convicted and received a 52-year sentence. In hindsight, it is apparent that the petitioner would have been well-advised to accept the five-year offer.

On June 5, 2006, on evidentiary hearing was held herein before magistrate judge W. David King on the issue of whether trial counsel was constitutionally effective with respect to the advice he gave his client during the plea negotiation process. The prosecutor, Timothy Langford, testified that he did not extend a five-year offer, and Mr. Lookofsky testified that he did extend the offer. Mr. Lookofsky and Mr. Langford testified that, when Mr. Lookofsky communicated a rejection of the five-year offer, Mr. Langford commented that there never had been any such offer. The magistrate judge concluded that, although it was a close call, the weight of the evidence indicated that there had been a five-year offer. In addition, Mr. Langford testified that, although he might have been willing to offer the petitioner some reduction in exchange for testimony against Boykin, under no circumstances, would he have entertained a five-year offer, which was simply too lenient in light of the seriousness of the charges against the petitioner. The magistrate judge found Mr. Langford's testimony to be credible. Accordingly, the magistrate judge concluded that the petitioner was unable to demonstrate prejudice under the test for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984), for the following

reasons: If the petitioner had attempted to accept the offer, in all likelihood, Mr. Langford would have withdrawn the offer he did not remember making, and the trial judge, William Shadoan, would not have enforced the agreement because the petitioner had not relied to his detriment upon the pretrial offer.

The court now concludes that, even though Mr. Lookofsky was not constitutionally ineffective in relation to the five-year offer, reasonable jurists could debate whether his representation was rendered ineffective as a result of his declining to pursue further plea negotiations on behalf of the petitioner. Mr. Lookofsky's adherence to a joint defense theory may have left him insufficiently motivated to encourage the petitioner to testify against his co-defendant, Boykin, in exchange for another offer. While the court continues to believe that the petitioner's claim of ineffectiveness in connection with a "missed" five-year offer is without merit under the rubric of *Strickland*, supra, in his motion for a COA, the petitioner has persuasively pointed out that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate [*Strickland*] prejudice in order to obtain relief." *Cuyler v. Sullivan*, supra, at pp. 349-350. Therefore, a COA shall be granted as to the broader issue of whether Mr. Lookofsky's failure to pursue additional plea negotiations that may have resulted in other favorable offers constituted an instance of adverse performance due to an underlying conflict of interest.

### Effectiveness in Relation to Investigation

The petitioner argues that Mr. Lookofsky was ineffective for failing to investigate the petitioner's defense. Corey Fitts was the sole surviving witness and the prosecution's chief witness. As indicated above, on February 4, 1999, Mr. Lookofsky advised the petitioner that

7

"[t]he only possible fly in the ointment is whether or not Corey Fitts testifies. ... I have been advised that Mr. Fitts is no longer in the area." At some point prior to trial, counsel should have discovered that Fitts had been subpoenaed to testify. The petitioner also argues that a reasonable investigation of the facts would have revealed that the physical evidence belied the joint defense theory that Fitts shot Wilson from inside the house. The court continues to believe that the "failure to investigate" claim is procedurally defaulted and without merit. Furthermore, it is not immediately apparent how counsel's failure to discover evidence that tended to damage a joint defense pertains to a matter that simultaneously hurt the petitioner and benefitted Boykin. At best, the failure to investigate hurt the petitioner more than his co-defendant (Boykin) if one accepts the petitioner's over-all claim that, in light of his lesser role in comparison to that of his co-defendant, the petitioner's best defense never was that Fitts committed the crimes. Nevertheless, the court now finds that reasonable jurists could debate whether, before trial, an unconflicted counsel would have revisited his prior advice to the petitioner in light of subsequent investigation. Accordingly, a COA shall be granted as to this issue.

### *Crawford* Claims

In his request for a COA, under the heading of "conflict of interest," the petitioner revisits the issue of Mr. Lookofsky's failure to object to introduction of out-of-court statements allegedly in violation of *Crawford v. Washington*, 541 U.S. 36 (2004) (Docket Entry No. 45, pp. 8-9). While an unconflicted counsel may not have proceeded to trial with a joint defense theory for the reasons already indicated, it is not apparent how counsel's failure, at trial, to object to the statements in question hurt the petitioner more than Boykin. The court concludes as that the *Crawford* issue has no plausible bearing upon the petitioner's allegation of conflict of interest. Furthermore, the issue

8

is procedurally defaulted and without merit for the reasons identified in the second magistrate judge's report, and is not subject to reasonable debate (Docket Entry No. 38, pp. 27-41). Accordingly, the COA shall be denied as to this issue.

### Effectiveness in Relation to Jury Instructions

Finally, the petitioner seeks a COA on the issue of whether Mr. Lookofsky was ineffective for not objecting to jury instructions that omitted the mens rea element of the wanton endangerment offenses of which he was convicted. According to the argument, even if, by providing transportation, the petitioner intended to promote or facilitate that Boykin and Everett commit an act of murder, it does not follow that he also specifically intended that Boykin and Everett commit acts of wanton endangerment to other persons in the vicinity of the murder. Like the petitioner's *Crawford* issue, this issue has no plausible relationship to the alleged conflict of interest. Mr. Lookofsky's loyalties to Boykin would not have prevented him from seeking proper instructions for the petitioner. In any event, by its very nature, shooting at two individuals on a front porch is wanton activity. This is because it is likely that others will be inhabiting the house or be in the vicinity and, under Kentucky law, one is presumed to intend the logical and probable consequences of one's conduct. The state court's determination of this issue was not contrary to, nor did it involve an unreasonable application of United States Supreme Court precedents, and reasonable jurists would not debate this conclusion. Therefore, the COA shall be denied as to this issue.

**Conclusions and Order**

The court continues to believe that the petitioner is not entitled a writ of habeas corpus for the reasons set forth in the Magistrate Judge's Report on October 25, 2005, its Opinion and Order on March 23, 2006, and the Second Magistrate Judge's Report on December 19, 2006. However, the court is of the opinion that the issues identified above may be debatable among jurists of reason. For this reason, the petitioner should not be denied the opportunity to seek appellate review of these issues. The court does not find the remaining issues raised in the petition to be debatable among jurists of reason.

Accordingly, it is hereby ORDERED that the petitioner's motion for a COA (Docket Entry No. 45) is GRANTED in part and DENIED in part. A COA is hereby GRANTED on the issue of whether counsel labored under an impermissible conflict of interest that manifested itself in counsel's decision to pursue a joint defense that was not in the petitioner's best interests and in counsel's failure to do the following: 1) pursue additional plea negotiations upon discovery of the unavailable of the five-year offer; 2) urge his client to express a willingness to testify against his co-defendant in exchange for another plea agreement; 3) discover the availability of the prosecution's key witness prior to trial; and 4) advise the petitioner prior to trial with respect to the consequences of said availability upon the wisdom of proceeding to trial with a joint defense. The court declines to issue a certificate of appealability on the petitioner's remaining claims.